IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SAMUEL LEO HEDGEPETH,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | **Civil No. TMD 15-1274** |
| v. | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| Defendant. | * | |
| ************ | | |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
<u>ALTERNATIVE MOTION FOR REMAND</u>**

Plaintiff Samuel Leo Hedgepeth seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 14), Defendant's Motion for Summary Judgment (ECF No. 15), and Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 16).[1]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 14) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

**I**

**Background**

Plaintiff was born in 1950, has a high-school education, and previously worked as a security guard, van driver, school bus driver, warehouse worker, and industrial park operator. R. at 24, 33, 198-99. Plaintiff protectively filed an application for DIB on September 29, 2011, alleging disability beginning on August 1, 2011, due to a pinched nerve in his back. R. at 171-77, 194, 198. The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 79-109, 114-19. On October 7, 2013, ALJ Robert W. Young held a hearing in Baltimore, Maryland, at which Plaintiff and a vocational expert ("VE") testified. R. at 30-78. On November 27, 2013, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of August 1, 2011, through the date of the decision. R. at 15-29. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on March 26, 2015. R. at 1-6, 10-11, 258-60. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On May 4, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

II

**Summary of Evidence**

The Court reviews here and in Part VI below Plaintiff's relevant medical evidence.

**A.    Opinion Evidence**

On December 27, 2011, a state agency medical consultant, Judy Kleppel, M.D., opined that Plaintiff's back impairment was not severe and thus did not assess his residual functional capacity ("RFC").  R. at 82-83, 88-89.

On March 5, 2012, an MRI of Plaintiff's lumbar spine revealed, among other things, "left-sided disc herniations at L3-4, L4-5, and L5-S1.  This is most significant at L5-S1 where there is a left paracentral disc extrusion [?] which impinges the left S1 nerve root."  R. at 347, 348.

On July 24, 2012, Lawrence Honick, M.D., an orthopedic surgeon, conducted a consultative examination of Plaintiff.  R. at 328-34; *see* R. at 22.  Dr. Honick noted:

> Currently [Plaintiff] complains of constant severe pain in the entire left side of his body beginning in his neck and involving his left arm, chest, back, left hip and entire left lower extremity.  There is occasional numbness in the left hand, and constant numbness over the medial aspect of the right thigh and leg.

R. at 328.  On physical examination of Plaintiff, Dr. Honick noted:

> Examination of the back reveals no abnormalities of curvature.  Moderate tenderness is noted throughout the lower back, mostly on the left, without spasm.  Motion is limited as noted.  The straight-leg-raising test is negative, and no motor deficits are noted in the lower extremities.  He has full range of motion of the hips without pain.

R. at 329.[2]  Dr. Honick recommended X-rays and MRI scans of both the cervical and lumbar spines, as well as X-rays of the pelvis, including the left hip.  R. at 329.  Dr. Honick found no convincing evidence of any work restrictions on a musculoskeletal basis.  R. at 329.

On July 26, 2012, another state agency consultant, M. Feld, M.D., again opined that Plaintiff's impairment was not severe.  R. at 96, 103.

**B.     Hearing Testimony**

    **1.     Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in his decision:

> [Plaintiff], who has a high school education, alleges an inability to work due to a pinched nerve in his back [R. at 198].  At the hearing, [Plaintiff] testified that his wife drove him to the hearing, although he does drive about two times a week himself.  He stated he lives with his wife in a two-story row house with a basement.  He attended driving school for about eight months and obtained his commercial driver's license (CDL).  He drove a shuttle bus on his last job, where he had to push wheelchairs onto a lift.  He left that job because he thought he had another job but it did not work out and he has not worked since.  [Plaintiff] testified to back pain that radiates down his left leg at all times.  He stated he has participated in physical therapy and received steroid injections.  He did have some relief but his insurance ran out and he stopped attending.  He stated he did not want to keep piling up bills so he decided to "just survive with the pain," using over the counter medication.  He uses Advil and Aleve and stated soaking in the tub helps.  He can lift and carry a gallon of milk but not that far.  He walks every day for exercise.  He has to get up and move around when seated.  He sleeps a lot and lies on the couch about four hours a day, which is less painful.  Further, [Plaintiff] reported problems reaching, bending, and leaning forward.  As for his activities of daily living, he shops one time a week, reads the newspaper, watches television, attends church two times a month, visits his daughter and engages in independent personal care.

R. at 21; *see* R. at 33-74.

---

[2] The "straight leg raising test is a test done during a physical examination to determine whether a patient with low back pain has an underlying herniated disk.  The straight leg raising test is positive if the patient experiences pain down the back of the leg when the leg is raised." *Miller v. Astrue*, No. 1:09-CV-1257 SKO, 2010 WL 4942814, at *1 n.2 (E.D. Cal. Nov. 30, 2010).

### 2.     VE Testimony

The VE testified that Plaintiff's past work as a van driver, school bus driver, warehouse worker, and "industrial truck operator" was at the medium exertional level, and his past work as a security guard was at the light exertional level, with skills transferable to the light job of lot attendant.[3]  R. at 75-76.

### III

### Summary of ALJ's Decision

On November 27, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of August 1, 2011; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was able to perform his past relevant work as a security guard; and (5) could perform other work in the national economy as a lot attendant.  R. at 20-25.  The ALJ thus found that he was not disabled from August 1, 2011, through the date of the decision. R. at 25.

In finding that Plaintiff did not have an impairment or combination of impairments meeting or equaling a listed impairment, the ALJ found:

> In reaching this conclusion, I have considered all of the listings, and in particular, I considered listing 1.04.  A review of the limitations resulting from [Plaintiff's] impairment indicates while it is severe, it does not meet or equal the requirements of a listing.  The signature of a state agency medical consultant on

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  Id. § 404.1567(b).

> Form SSA-831 is implicit recognition that the consultant has considered and ruled out a finding that a medical listing was either met or equaled. No treating physician has indicated any findings that [Plaintiff's] impairments would satisfy the requirements of any listed physical impairment for the relevant time period at issue. Specifically, a review of the record does not reflect the degree of motor neurological deficits as required by any listing found under Musculoskeletal. There is no evidence of documented nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis to the degree as required by 1.04.

R. at 20-21 (citation omitted).

## V

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production

and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4),

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

If an ALJ finds that a claimant, who has medical evidence of drug addiction or alcoholism, is disabled, the ALJ must then determine whether the addiction or alcoholism is a contributing material factor to the determination of disability. *Id.* §§ 404.1535(a), 416.935(a). The key factor is whether the ALJ still would find the claimant disabled if the drug or alcohol use stopped. *Id.* §§ 404.1535(b)(1), 416.935(b)(1). To make this determination, the ALJ evaluates which of the claimant's current physical and mental limitations would remain if the claimant stopped using drugs or alcohol and then determines whether any or all of the remaining limitations would be disabling. *Id.* §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the remaining limitations would not be disabling, then the ALJ will find that the drug addiction or alcoholism is a material contributing factor, and a determination of disability is prohibited. *Id.* §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). The burden to prove that substance abuse is not a contributing factor material to his disability lies with the claimant. *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).

V

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erred at step three of the sequential evaluation process by failing to evaluate properly whether his impairments met or equaled Listing 1.04A. Pl.'s Mem. Supp. Mot. Summ. J. 9-25, ECF No. 14-2. Defendant maintains, however, that Plaintiff did not demonstrate motor loss accompanied by sensory or reflex loss to satisfy the criteria of Listing 1.04A. Def.'s Mem. Supp. Mot. Summ. J. 11-13, ECF No. 15-1. For the reasons discussed below, the Court remands this case for further proceedings.

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.' A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted);

*see* 20 C.F.R. pt. 404, subpt. P, app. 1. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990). The claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986). "In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Id.* On the other hand, "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295 (citation omitted). While "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)), "the ALJ 'must build an accurate and logical bridge from the evidence to his conclusion.'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

> Listing 1.04A provides:
>
> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by [1] neuro-anatomic distribution of pain, [2] limitation of motion of the spine, [3] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, [4] positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A). In other words, "motor loss . . . accompanied by sensory or reflex loss" is one of the four symptoms of nerve root compression under Listing 1.04(A). *See Radford*, 734 F.3d at 291, 293.

Plaintiff maintains that the ALJ erred in finding no evidence of nerve root compression, pointing to the March 2012 MRI of Plaintiff's lumbar spine showing nerve root impingement (R. at 347, 348). Pl.'s Mem. Supp. Mot. Summ. J. 15, ECF No. 14-2. Defendant contends, however, that, even in light of this MRI evidence, the medical evidence does not establish the presence of motor loss accompanied by sensory or reflex loss. Def.'s Mem. Supp. Mot. Summ. J. 12, ECF No. 15-1. In turn, Plaintiff points to test results suggesting motor loss (Pl.'s Mem. Supp. Mot. Summ. J. 22-23, ECF No. 14-2), as well as numbness in his lower extremities demonstrating sensory loss (Pl.'s Resp. Def.'s Mot. Summ. J. 5-6, ECF No. 16). In response, Defendant points to evidence in the record demonstrating full motor strength and no motor deficits in the lower extremities. Def.'s Mem. Supp. Mot. Summ. J. 13, ECF No. 15-1. Both parties also point to conflicting results of straight-leg-raise testing. Pl.'s Mem. Supp. Mot. Summ. J. 16, ECF No. 14-2; Def.'s Mem. Supp. Mot. Summ. J. 13, ECF No. 15-1.

In light of the parties' arguments, the Court remands this case for further proceedings. It is not the Court's "role to speculate as to how the ALJ applied the law to its findings or to

hypothesize the ALJ's justifications that would perhaps find support in the record." *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) (per curiam).  The Court's resolution of Plaintiff's step-three issue would invite the Court "to review the medical record de novo to discover facts to support or refute the ALJ's finding at Step Three," which the Court may not do.  *Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016) (per curiam).  As noted above, the Court does not reweigh conflicting evidence.  Because "the ALJ's failure to adequately explain his reasoning precludes [the Court] from undertaking a 'meaningful review' of the finding that [Plaintiff] did not satisfy Listing 1.04A," *Radford*, 734 F.3d at 296, remand is appropriate, and the Court need not address Plaintiff's remaining arguments.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 15) is **DENIED**.  Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.  Plaintiff's alternative motion for remand (ECF No. 14) is **GRANTED**.  Defendant's final decision is **REVERSED IN PART** under the fourth sentence of 42 U.S.C. § 405(g).  This matter is **REMANDED** for further proceedings consistent with this opinion.  A separate order shall issue.

Date: September 28, 2016                                       /s/
                                                     Thomas M. DiGirolamo
                                                     United States Magistrate Judge